IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

———————————————

KPNX-TV CHANNEL 12, a division of Multimedia Holdings Corporation;
PHOENIX NEWSPAPERS, INC.; MEREDITH CORPORATION d/b/a/
KPHO-TV; KTVK-3TV, *Petitioners*,

*v.*

THE HONORABLE SHERRY STEPHENS, Judge of the SUPERIOR
COURT OF THE STATE OF ARIZONA, in and for the County of
MARICOPA, *Respondent Judge,*

STATE OF ARIZONA; JODI ANN ARIAS, *Real Parties in Interest.*

No. 1 CA-SA 14-0213

FILED 12-16-2014

———————————————

Petition for Special Action from the Superior Court in Maricopa County
No.  CR2008-031021-001
The Honorable Sherry K. Stephens, Judge

**JURISDICTION ACCEPTED AND RELIEF GRANTED**

———————————————

COUNSEL

Ballard Spahr LLP, Phoenix
By David J. Bodney, Christopher Moeser, Brunn W. Roysden III
*Counsel for Petitioners*

Maricopa County Attorney's Office, Phoenix
By M. Colleen Connor, Anne C. Longo, Juan M. Martinez
*Counsel for Real Party in Interest State of Arizona*

Law Office of L. Kirk Nurmi, Phoenix
By L. Kirk Nurmi

Willmott & Associates PLC, Phoenix
By Jennifer L S Willmott
*Co-counsel for Real Party in Interest Jodi Ann Arias*

---

**OPINION**

Judge Maurice Portley delivered the Opinion of the Court, in which Presiding Judge Patricia A. Orozco and Judge Randall M. Howe joined.

---

**P O R T L E Y**, Judge:

¶1        Petitioners, who are members of the broadcast and print media, challenge a ruling closing the penalty phase of a capital murder trial to the press, as well as to the public. As a result, we must decide whether a "clear and present danger" exists under Arizona Rule of Criminal Procedure ("Rule") 9.3 that justifies excluding the press and public during portions of the penalty phase of the trial. Because we find no clear and present danger, we accept special action jurisdiction and grant relief by vacating the ruling of October 30, 2014, closing the penalty phase of the trial to the press and public.

## SPECIAL ACTION JURISDICTION

¶2        We have discretion to accept special action jurisdiction when a party does not have a plain, adequate, or speedy remedy by appeal. *See* Ariz. R.P. Spec. Act. 1(a); *Patterson v. Mahoney*, 219 Ariz. 453, 455, ¶¶ 2, 5, 199 P.3d 708, 710 (App. 2008) (accepting special action jurisdiction to interpret criminal procedure rules). Because Petitioners do not have any other mechanism to challenge the ruling, we exercise our discretion and accept jurisdiction. *See Phoenix Newspapers, Inc. v. Superior Court*, 140 Ariz. 30, 32-33, 680 P.2d 166, 168-69 (App. 1983).

## FACTUAL AND PROCEDURAL BACKGROUND

¶3        Jodi Arias was convicted of first degree murder, but after the jury was unable to reach a verdict on the penalty, the superior court declared a mistrial of the penalty phase of the trial. A new jury was empaneled to consider evidence in the retrial of the penalty phase. The

2

court was subsequently advised that Arias wanted to testify in mitigation outside the presence of the press and public and asked the court to seal the transcript of the testimony.

**¶4** After argument in chambers, the trial court granted the motion. In open court, the court announced the ruling by stating the "next witness will not testify unless these proceedings are closed to the public." The court found that the witness was necessary for the mitigation portion of the trial's penalty phase, and that closing the courtroom was necessary for the administration of justice and was no broader than necessary given Arias' overriding and compelling interest in presenting mitigation evidence. The court then closed the courtroom proceedings to all except the family of the victim, and sealed the testimony of Arias until after a verdict.

**¶5** Several publishing and broadcasting entities unsuccessfully objected to the ruling, and Petitioners subsequently filed this special action. Petitioners also sought to stay the ruling closing the courtroom and, after a hearing, this court granted a stay.

## DISCUSSION

**¶6** Petitioners argue that the ruling closing the proceeding to the press and public violated the First Amendment to the United States Constitution.[1] Arias, however, contends that the ruling properly protected her rights under the Fifth, Eighth, and Fourteenth Amendments to the United States Constitution. Although the Arizona Constitution provides that cases "shall be administered openly," Ariz. Const. art. II, § 11; *see also* Ariz. Const. art II, § 24 (an accused is entitled to a speedy public trial), we need not resolve the dispute on constitutional grounds if "other principles of law are controlling and the case can be decided without ruling on the constitutional questions." *In re United States Currency of $315,900.00,* 183 Ariz. 208, 211, 902 P.2d 351, 354 (App. 1995).

**¶7** We review the interpretation of statutes and court rules, and constitutional rules de novo. *Fragoso v. Fell*, 210 Ariz. 427, 430, 432, ¶¶ 7, 13, 111 P.3d 1027, 1030, 1032 (App. 2005). We interpret rules of criminal procedure by applying the principles of statutory construction and first look to the plain text of the rule because that is "the best and most reliable index of [the rule's] meaning[.]" *State v. Hansen,* 215 Ariz. 287, 289, ¶ 7, 160 P.3d 166, 168 (2007) (quoting *Deer Valley Unified Sch. Dist. No. 97 v. Houser,*

---

[1] The State also opposes closing the proceedings to the press and public.

214 Ariz. 293, 296, ¶ 8, 152 P.3d 490, 493 (2007)). Where issues involve mixed questions of fact and law, we defer to the court's factual findings unless clearly erroneous, but review the legal conclusions de novo. *See State v. Gonzales-Gutierrez,* 187 Ariz. 116, 118, 927 P.2d 776, 778 (1996). And "[b]ecause the value of the public trial guarantee to the judicial system is incalculable, we carefully scrutinize any trial court order that denies, restricts or limits" a public trial. *Ridenour v. Schwartz*, 179 Ariz. 1, 3, 875 P.2d 1306, 1308 (1994).

**¶8** It is undisputed that the public has a constitutional and common law right of access to observe court proceedings. *Id.* "Courts are public institutions[] [and] [t]he manner in which justice is administered does not have any private aspects." *Phoenix Newspapers, Inc. v. Superior Court In & For Maricopa Cnty.*, 101 Ariz. 257, 259, 418 P.2d 594, 596 (1966). The exclusion of the public, therefore, "is an extraordinary measure and should be done with caution[,]" *State v. Atwood*, 171 Ariz. 576, 633, 832 P.2d 593, 650 (1992) (quoting *State v. Bush,* 148 Ariz. 325, 330, 714 P.2d 818, 823 (1986)) *opinion modified on denial of reconsideration (July 10, 1992) disapproved on other grounds by State v. Nordstrom*, 200 Ariz. 229, 25 P.3d 717 (2001), especially when requested by a defendant and "would take from the public its right to be informed of a proceeding to which it is an interested party," *Phoenix Newspapers, Inc.*, 101 Ariz. at 259, 418 P.2d at 596.

**¶9** Although Arizona's constitution directs that criminal proceedings be open, our supreme court, following the guidance of the United States Supreme Court, has determined that the public may be excluded from a criminal trial if there are circumstances which "establish a clear and present danger that the judicial process will be subverted by an open hearing," in which case "appropriate action should be taken by a court to preserve judicial integrity." *Phoenix Newspapers, Inc. v. Jennings*, 107 Ariz. 557, 560, 490 P.2d 563, 566 (1971) (citing *Thomas v. Collins*, 323 U.S. 516 (1945) and *Bridges v. California*, 314 U.S. 252 (1941)). Our supreme court defined clear and present danger to "mean[] that the substantive evil must be extremely serious and the degree of imminence extremely high." *Id.* (citing *Bridges*, 314 U.S. at 252). As a result, the right to an open, public trial is not absolute, but a trial court must balance the right to a public trial against other interests that might justify closing a courtroom to the public. *State v. Smith*, 123 Ariz. 243, 249, 599 P.2d 199, 206 (1979) (closing the courtroom to the public but not the press when the rape victim testified).

**¶10** The definition of clear and present danger in *Phoenix Newspapers, Inc. v. Jennings* was subsequently adopted in Rule 9.3(b). S*ee* comment to Ariz. R. Crim. P. 9.3(b). The Rule provides as follows:

> **b. Spectators.** All proceedings **shall be open to the public, including representatives of the news media, unless** the court finds, upon application of the defendant, that an open proceeding presents **a clear and present danger to the defendant's right to a fair trial by an impartial jury.** A complete record of any closed proceedings shall be kept and made available to the public following the completion of trial or disposition of the case without trial.

Ariz. R. Crim. P. 9.3(b) (emphasis in text added). Stated differently, the court can close a proceeding at the request of a defendant only when the public proceeding would create a clear and present danger to the defendant's right to a fair trial with an impartial jury.

¶11            If the court finds a clear and present danger, the court must then consider four constitutional factors before closing the proceedings; namely, the party seeking to close the hearing must advance an overriding interest that is likely to be prejudiced; the closure must be no broader than necessary to protect that interest; the trial court must consider reasonable alternatives to closing the proceeding; and the court must make findings to support the closure. *Waller v. Georgia*, 467 U.S. 39, 48 (1984); *see also State v. Tucker*, 231 Ariz. 125, 132-33, ¶¶ 9-13, 290 P.3d 1248, 1255-56 (App. 2012) (discussing *Waller* and noting that "the *Waller* test applies to both complete and partial closures of Arizona criminal trials"). *Waller* is a reminder that a public trial is for the benefit of the public and a defendant, and the presence of the public may keep the judges, lawyers, witnesses and jurors "keenly alive to a sense of their responsibility and to the importance of their function[.]" *Waller*, 467 U.S. at 46.

¶12            During the proceeding to resolve Arias' motion to exclude spectators and seal the proceedings, her lawyer stated Arias would not testify because the media coverage of her testimony would affect her ability to think and answer questions in a manner "she truly means" to "fully actualize her mitigation." Specifically, counsel stated that Arias was receiving threatening mail, including death threats, and as a result, Arias did not feel that she would be "able to fully communicate what she wants to say, communicate her remorse and go through all the mitigating factors and get them out there in front of the jury with [ ] the public here."

¶13        After considering the State's objection, the court conducted the *Waller* analysis and determined that completely closing the proceeding to the public was not necessary.  The court suggested that the press and public be moved to the overflow courtroom to view the trial.  Arias was advised of the ruling, and Arias subsequently advised the court that she would not testify if the press and public could know how she testified "because of the pressure that I would feel because of these threats."  Although expressing concern that Arias was being manipulative, the court stated it had considered the potential legal ramifications if an appellate court later determined that Arias did not voluntarily waive her right to present evidence in mitigation.  As a result, the court closed the proceeding for Arias' testimony.

¶14        Although the court did not specifically find a clear and present danger to a fair trial before an impartial jury, we infer the court considered Arias' refusal to testify in a public proceeding and its potential legal implications to be a clear and present danger.  We disagree with the implicit finding, however.

¶15        Despite Arias' belief that the public reaction to her testimony would inhibit her ability "to present a full and complete case for her life," her concerns do not demonstrate the existence of a clear and present danger that would impede her right to a fair trial with an impartial jury.  *See State v. Mahkuk*, 736 N.W.2d 675, 685 (Minn. 2007) (concluding that there was no specific evidence that a witness was threatened or intimidated or the specific nature of the threat or intimidation).  In fact, in *Press-Enterprise Co. v. Superior Court*, the Supreme Court recognized that criminal cases may "provoke public concern, outrage, and hostility[,]" but "[w]hen the public is aware that the law is being enforced and the criminal justice system is functioning, an outlet is provided for these understandable reactions and emotions."  478 U.S. 1, 13 (1986) (internal quotation marks and citations omitted).  As a result, while we do not discount the volume or nature of Arias' mail or the fact that some people may wish her ill, her concern does not, as a matter of law, amount to an extremely serious substantive evil warranting closing the trial to the public and press.

¶16        We recognize the trial court did not make the ruling lightly.  However, even if Arias decides not to testify in open court, her lawyers or the State can present evidence from the guilt phase trial or the earlier

penalty phase trial that could be considered to be mitigation.[2] A defendant who testified in open court during the guilt phase of the trial cannot decide she will only testify in the penalty phase if the press and public are excluded and her testimony is sealed until after any verdict. Neither the rule nor case law envisions that her concerns amount to a clear and present danger to a fair trial before an impartial jury. *See Phoenix Newspapers, Inc.*, 101 Ariz. at 260, 418 P.2d at 597 (noting that it "is clear that a defendant has no right to a secret trial").

**¶17** The trial court correctly found that there was an alternative to closing the trial—having the press and public view her testimony from a different courtroom. Although Arias balked at the alternative, she has not demonstrated a clear and present danger to a fair trial with an impartial jury. Consequently, we grant Petitioners' request for relief and vacate the ruling allowing Arias to testify with the courtroom closed to the public and press.[3]

## CONCLUSION

**¶18** We accept special action jurisdiction, grant relief to Petitioners by vacating the ruling closing the proceedings to allow Arias to testify and temporarily sealing the transcripts of the October 30 hearing. Furthermore, if Arias began to testify in a closed proceeding, those transcripts shall be unsealed.



Ruth A. Willingham · Clerk of the Court
F I L E D : gsh

---

[2] Although Arias argued to the trial court that her refusal to testify might not be voluntary, nothing in the special action record reflects that she will waive her right to present any mitigation if the proceedings are not closed. *Cf. State v. Hausner*, 230 Ariz. 60, 84-86, ¶¶ 116-22, 280 P.3d 604, 628-30 (2012).

[3] Because we have resolved the issue on non-constitutional grounds, we need not address the constitutional arguments. *See State v. Korzuch*, 186 Ariz. 190, 195, 920 P.2d 312, 317 (1996).